DaNiel J.
 

 William F. Bell, the lessor of the plaintiff and his sister Charity Elizabeth, the late wife of the defendant, on the death of their grand-mother, entered as tenants in common and possessed the Whitehall tract of land, under the will, made in 1820, of their grandfather William Fisher. Their father, Josiah Bell, was the owner of the Bell chapel lands, and made his will and died in 1843. He did not devise any interest, in this tract of land to his son William F, Bell, nor had he ever before by deed given him any interest in it. But he devised, with other tracts of land and slaves, the whole of the Bell’s chapel land to his daughter Charity. To his son William F. Bell he devised and bequeathed two other tracts of land and slaves, and other personal property. And to a second son, Josiah Bell, (born probably after the death of the grand-father,) he devised and bequeathed houses and lots in the town of Beaufort, and other tracts of land and slaves. William contends, that the condition, mentioned in William Fisher’s will, upon which the share devised to his sister in the Whitehall land, should be divested and go over to him, has been substantially performed, by their father Josiah Bell, devising the whole of the Bell chapel lands to his sister. On such an event, though not literally in the terms of William Fisher’s will, William contends a substantial performance of the condition has taken place. The condition, upon which William was to become the entire owner of the Whitehall lands, has certainly not literally happened. The estate of Charity in the Whitehall lands was to cease, and the whole of the said lands were to vest in William,
 
 provided
 
 he, William, in a reasonable time, trails-
 
 *526
 
 ferred to her by deed all the estate and title in and to the Bell chapel land, which his father should confer on him, or which might accrue to him by descent. No estate in any way. jn ^ jgej¡ cjlapei lands ever came to William from his father. He, therefore, never had it in his power to perform, literally, the condition mentioned in his grand-father’s will; on the performance of which, the whole of the Whitehall tract was to go over to him. Then, are we authorised to construe the words of the condition in William Fisher’s will, in such a way as to give effect to the limitation over to William in, the entire Whitehall tract, on the event which has taken place, namely, that Charity has got the whole of the Bell chapel lands, not by her brother’s deed, but by devise from her father, who was the owner of the same at his death ? Where the condition cannot be understood by the court to have been substantially complied with by the event, which has actually happened, the gift over fails.
 
 McKennon
 
 v
 
 Seawell,
 
 7 Eng. Com. L. Rep. 339. In the case of
 
 Jones
 
 v
 
 Westcomb,
 
 1 Eq. Ca. Abr. 245, and in most, if not all, of the cases cited for the plaintiff, the event, which actually happened, comprehended that, for which the gift in the will provided, as the greater includes the less, so that the one of necessity involved the other in substance and effect.
 
 Jones
 
 v
 
 Westeoinb
 
 was a gift over, in the event that the child, then in
 
 ventre sa
 
 mere, died under age; it was held' a good gift over, although there was at the time no child in
 
 ventre sa mere.
 
 But where there is no such necessary consequence, the court must say, the event on which the will provided that the estate should go over, had not taken place.
 
 McKennon v Seawell.
 
 Did the devise of the Bell Chapel land, by Josiah Bell to his daughter Charity, the event which has actually happened, comprehend that, for which William Fisher’s Will directed and provided, so that the one, namely, the event which has happened, necessarily involved the other in substance and effect, as the greater includes the less ? Can the court say that it sees, that the testator willed, that the estate,, which Charity had in Whitehall, should be divested, and
 
 *527
 
 tiie conditional limitation over to William become vested, on the event which has taken place? We must say, that we do not necessarily see, that the event, which has happened, is comprehended in that provided for by the will, as the greater including the less. This case, instead of being governed by that of
 
 Jones and Westcomb
 
 and the class of cases, of which that is the leading one, falls, it seems to us, under that class of cases, of which
 
 Doe
 
 v
 
 Shipyard,
 
 Douglass 75 is the leading one. That case was under a devise of lands to trustees, to pay £20 of the rents and profits to the testator’s daughter and the rest to her husband, and the whole rents and profits to the husband after the daughter’s death. And in case the daughter should
 
 survive
 
 her husband, then the land to the use of the daughter for life, and after her death to the use of her son in tail, with several remainders over. The daughter died
 
 before
 
 her husband. It was held, that the limitation over should not take effect. The contingency of her dying
 
 before
 
 her husband affected all the limitations, and it operated as a condition precedent, which defeated the limitations over. Lord Mansfield said, “ The court may supply the omission of express words, if they can find a
 
 plain intent;
 
 but, unless that is the case, they cannot do it. And upon a full consideration of the whole of the will, we do not find there is sufficient for us to gather such intent, so as to warrant us in supplying the omitted words. Guesses may be formed, but that is not enough. Perhaps,
 
 quod voluit non dixit.
 
 We cannot make a will for a testator. Conjectures may be made both ways.” So, in the case before us, we cannot say, otherwise than by a guess, that William Fisher, the testator, intended the limitation over to vest in William in the whole of the Whitehall lands', in the event, which has actually taken place. We can see a reason for his giving William an election to take the whole of the Whitehall land, in case the whole of the Bell Chapel land by purchase, or a moiety by descent from his father, came to him. It was to put it in the power of William to have a home in all the Whitehall land, if he would convey to his-
 
 *528
 
 sister what he should receive from his father in the Bell Chapel land to make her a home in the latter tract of land, The testator intended something like equality between them. Josiah Bell lived 21 years after the death of William Fisher, and in that time probably acquired several other tracts of land, and much enlarged his personal estate, and also had another child. And he made ample provision by his will, in lands and slaves, for all three of his children, without any reference, so far as we can see, to the conditional limitation to William, contained in his grand-father’s will. As Josiah Bell had, at the time Mr. Fisher made his will, no other land but the Bell Chapel tract, as far as appears, nor any other grand-children but William and Charity, the testator, Fisher, plainly contemplated, that Bell, the father, would provide for his two children, probably, equally in that land, or, at least, that he would provide for his son in
 
 that
 
 tract. It was to that state of facts he had an eye; and, in that event, he left it to the election of William, whether he would keep his half of Whitehall and the provision in Bell Chapel, made by or derived from his father, and let his sister
 
 keep
 
 her half of Whitehall; or whether William would take the whole of Whitehall, and give Charity the whole of Bell Chapel. But the event is, that, instead of providing for William in Bell Chapel, his father has given him
 
 oilier
 
 lands, perhaps of equal value to Bell Chapel, and given Bell Chapel to Charity. So that, if William should get the whole of Whitehall, he keeps all the provision made for him by his father, and deprives his sister of that made for her by his grand-father — ■ thus, perhaps, having three times as much as Charity— though it is apparent, from his dividing Whitehall equally between them, that Mr. Fisher meant something like an equality between them. It is possible, if the testator had foreseen what
 
 has
 
 happened, he might stilL have made his will
 
 the same
 
 way.
 
 But
 
 we
 
 cannot
 
 see, with any certainty, that he would ; and, therefore, we cannot say, that in substance the case has happened which he had in view. He might have meant to say what the plaintiff contends for;
 
 *529
 
 but that is not the meaning of what he has said. Therefore we cannot determine that Charity’s estate in Whitehall has been displaced. There must be a new trial.
 

 Pjer Curiam. New trial awarded.